UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:07CV-72-H

SPECTRUM SCAN, LLC                                                                           PLAINTIFF

V.

AGM CALIFORNIA                                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Spectrum Scan LLC ("Spectrum") is a Kentucky corporation. Defendant AGM California ("AGM") is a California general partnership. Spectrum and AGM entered into a contractual arrangement. Disputes arose, and now Spectrum has sued AGM for breach of contract, among other claims. AGM has motion to dismiss based upon the absence of personal jurisdiction. Like many other such motions, the Court must weigh all of the competing facts to determine whether AGM has enough contacts with Kentucky for this Court to exercise jurisdiction over it.

I.

AGM owns and operates radio stations in California, including KGFM in Bakersfield, California. Spectrum is a company run by Rodney Burbridge, which assists radio stations in matters before the Federal Communications Commission (the "FCC"). In 2003 and early 2004, Burbridge apparently contacted Rogers Brandon, then Vice President and Secretary of AGM, regarding a possible relocation of KGFM to a community closer to Los Angeles. Spectrum was to prepare a request (the "Upgrade Request") for submission to the FCC to secure its consent to KGFM's relocation. The negotiations between Spectrum and AGM apparently took place

during two face-to-face meetings in California; one face-to-face meeting in Maryland; and a variety of communications via phone, fax, and email. On February 24, 2005, they executed a contract.

The contract contained a choice-of-law provision providing that Kentucky law would govern any disputes regarding the contract. At some point, the parties considered modifying the contract. Spectrum asserts that a modification was agreed to, while AGM says that it was not. The copy of the amended agreement provided to the Court was not signed by either party. Because the Court has not conducted an evidentiary hearing, the pleadings and affidavits must be viewed in the light most favorable to Plaintiff, and the Court must not consider AGM's version of any disputed facts. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Spectrum alleges that AGM breached their agreement, and thus filed this suit.

No AGM employee apparently ever visited Kentucky as part of the negotiation or execution of this contract. Conversely, the work Spectrum performed per its contract with AGM was conducted almost exclusively in Kentucky. Although the final work product was aimed at California (the location of the radio station) and Washington, D.C. (the headquarters of the FCC), the bulk of the work conducted by AGM did occur in Kentucky.

II.

The Court has regularly reviewed these delicate questions of personal jurisdiction. *See, e.g.*, *Papa John's Int'l., Inc. v. Entm't Mktg Int't, Ltd.*, 381 F.Supp.2d 638 (W.D. Ky. 2005); *Hillerich & Bradsby v. Hall*, 147 F.Supp.2d 672 (W.D. Ky. 2001). Spectrum has the burden of establishing personal jurisdiction. *See Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980).

To determine whether specific jurisdiction exists, district courts must apply the law of the

state where they sit, subject to due process limitations. *Id.* at 439. Kentucky's long-arm statute provides that "a court may exercise personal jurisdiction over a person who acts directly or by an agent as to a claim arising from the person's . . . transacting any business in this Commonwealth . . . ." KRS. § 454.210(2)(a). The Sixth Circuit has interpreted this statute to extend to the limits of due process. Therefore, the Kentucky long-arm statute inquiry and the due process inquiry collapse to a single due process inquiry. *Aristech Chem Int'l, Ltd. v. Acrylic Fabricators, Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (citations omitted).

For the Court to have personal jurisdiction over a non-resident defendant, the defendant must have "minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit has laid out a familiar three-part test for determining whether a non-resident defendant has had sufficient "minimum contacts":

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (footnote omitted). All three prongs of the *Southern Machine* test must be satisfied. The purposeful availment prong of the *Southern Machine* test may be satisfied in a case arising out of a contract if the facts show that the nonresident defendant entered into a "substantial business contract" with a party in the forum. *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982). In determining whether an interstate contract can justify the exercise of

3

personal jurisdiction over a nonresident defendant, courts should examine "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing" to determine whether the "defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). The Sixth Circuit has repeatedly focused on where the negotiation and performance of a contract occurred. *Calphalon*, 228 F.3d at 722 (6th Cir. 2000) (citation omitted). The process of analyzing personal jurisdiction is not a mechanical one and each case must be analyzed on its individual merits. *See In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 225-26 (6th Cir. 1972).

### III.

Several factors weigh in favor of finding personal jurisdiction in this case. First, and most obviously, AGM did contract with a Kentucky corporation, Spectrum. Second, the initial contract and the revised contract both contained Kentucky choice-of-law provisions, demonstrating at least some purposeful availment of the privileges of Kentucky law. Third, the payment contemplated by the contract would have been sent to a Kentucky corporation.

However, a much wider range of factors weigh *against* a finding of personal jurisdiction. First, AGM apparently did not initiate the contact between the parties – Spectrum, the Kentucky corporation, apparently reached out to AGM. Second, the negotiation between the parties regarding the contracts did not take place in Kentucky. The only three in-person meetings that occurred all took place outside of Kentucky, and the remaining contacts (while Plaintiff's employees were in Kentucky) occurred via phone, email, or fax. Third, the execution of the contract did not involve any representatives of AGM coming to Kentucky to carry out their

contractual responsibilities. Fourth, the subject matter of the contract – KGFM – is and was located in California. Fifth, although the contracts did contain a choice-of-law provision stating that any disputes over the contract would be governed by Kentucky law,[1] they did not contain any provision stating that AGM would waive personal jurisdiction in Kentucky courts. While no single one of these factors, standing alone, would suggest against finding personal jurisdiction, in the aggregate they present a compelling case for dismissal.

Reviewing the *Southern Machine* test confirms this conclusion. The first inquiry under *Southern Machines* is whether AGM purposefully availed itself "of the privilege of acting in the forum state or causing a consequence in the forum state." *Southern Machine*, 401 F.2d at 381. Although, as discussed above, the Kentucky choice-of-law provision does indicate some purposeful availment, overall AGM did not purposefully avail itself of the privilege of acting in Kentucky. The facts here are similar to *Hall*, which admittedly was also a close case. In *Hall*, this Court found no purposeful availment where, *inter alia*, the plaintiff sought out the defendant for the purpose of entering into a contract, the contract was negotiated in person outside of Kentucky, and the defendant never visited Kentucky. *Hall*, 147 F.Supp.2d at 677. That pattern is the same here. It is undoubtedly true that AGM did have more frequent contacts – via phone, email, and fax – with Kentucky than did the defendant in *Hall*, but even the combination of those contacts does not add up to purposeful availment.

It is true that because of the bulk of the activities contemplated under the contract occurred in Kentucky (i.e. the development of Upgrade Request) occurred in Kentucky, personal jurisdiction should exist. However, the key inquiry in personal jurisdiction cases concerns the

---

[1] A California court might be required to construe the contract under Kentucky law.

5


activities of the *defendant*, not the plaintiff. The fact that Spectrum conducted the work under the contract in Kentucky may be relevant, but it is certainly not dispositive.

Personal jurisdiction cases normally present delicate questions that must be weighed on their individual merits; this one is no exception. However, AGM's contacts with Kentucky in this case were so "attenuated" that AGM should not have "reasonably anticipate[d] being haled into court there." *Papa John's*, 381 F.Supp.2d at 641 (quoting *Burger King*, 471 U.S. at 475). Spectrum is foreclosed from relief in this Court, but may seek relief in another court.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to dismiss is SUSTAINED and this case is DISMISSED WITHOUT PREJUDICE.

This is a final order.

cc:     Counsel of Record