UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-72-H

SPECTRUM SCAN, LLC                                    PLAINTIFF

V.

AGM CALIFORNIA                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff has asked the Court to reconsider its prior order dismissing the case due to the absence of personal jurisdiction, correctly noting that the jurisdiction analysis from the tort claim perspective may vary, though certainly not necessarily, from a contractual claim perspective. Indeed, Kentucky's long arm statute contains specific provisions which were carefully drafted "to ensure that jurisdiction over nonresident defendants in a variety of contexts is predicated on the requisite minimum contacts." *Auto Channel, Inc. v. Speedvision Network*, *(Auto Channel I)* 995 F. Supp. 761, 763 (W.D. Ky. 1997). As this Court has noted, "Kentucky has elected to assume personal jurisdiction over a non-resident tort-feasor whose activities outside the state result in injury only if that tort-feasor regularly does or solicits business withing the state or has other substantial connection to the Commonwealth." *Id.* (quoting *Pierce v. Serafin*, 787 S.W.2d 705, 705 (Ky. Ct. App. 1990).

Here, Plaintiff alleges two counts sounding in tort. Specifically, Count II of Plaintiff's complaint, styled, "Conversion and Misuse of Spectrum's Proprietary and Confidential Information" alleges that Defendant's use of Plaintiff's confidential and proprietary information

constitutes a misappropriation of Plaintiff's trade secrets and intellectual property.  The proprietary information at issue is what the Court will refer to throughout its analysis as the "Upgrade Request Plan" - a methodology for increasing a radio station's value through changes to the FM Table of Allotments through the FCC.  Under Count III, ("Fraud"), Plaintiff alleges that Defendant represented that it would not use the Upgrade Request Plan without sharing in the increase in value derived from such use.  Plaintiff claims that it disclosed the Upgrade Request Plan in reasonable reliance on these allegedly fraudulent misrepresentations.

As before, Plaintiff has raised valid arguments.  Consequently, the Court has taken this opportunity to thoroughly review its original decision in the context of Plaintiff's tort claims.  As part of that effort the Court has reviewed many of its own decisions regarding personal jurisdiction.  This has resulted in a lengthy writing.  Ultimately, the Court concludes as before that Defendant's limited contacts with Kentucky cannot justify personal jurisdiction.  For the reasons that the Court now explains, it finds the original rationale sound.

I.

As a threshold matter, the Court must consider the mechanisms of each of the alleged torts.  As the Court has previously noted, in 1990 Kentucky passed the Kentucky Uniform Trade Secrets Act ("KUTSA"). Ky. Rev. Stat. Ann. § 365.880 et. seq.  KUTSA establishes a statutory scheme governing the definition, protection, and penalties for the misappropriation of trade secrets.  *See Auto Channel, Inc. v. Speedvision Network (Auto Channel II),* 144 F. Supp. 2d 784, 788 (W.D. Ky. 2001).  As part of the statutory scheme, KUTSA replaces all conflicting state law regarding misappropriation of trade secrets.  *Id.*; Ky. Rev. Stat. Ann. § 365.892 (KUTSA "replaces conflicting tort, restitutionary, and other law of this state providing remedies for

2

misappropriation of a trade secret.").

In considering the nature of Plaintiff's conversion claim, the Court concludes that KUTSA[1] preempts the conversion of intellectual property claim.  The Court will therefore analyze that count as if pled under KUTSA.  Under KUTSA, "[t]o prove misappropriation, Plaintiffs must show that the trade secret was acquired by improper means, was disclosed improperly, or was used by someone without proper consent." *Id.*  Here, Plaintiff appears to allege that Defendant acquired the Upgrade Request Plan through "improper means" since Plaintiff  revealed its methodology only after Defendant promised not to use the idea without sharing the increased value.  Moreover, Defendant allegedly used the Upgrade Request Plan "without proper consent" because Defendant lost Plaintiff's consent after it allegedly repudiated its agreement to pay Plaintiff.

Through this understanding of the elements of the Plaintiff's claims, the Court may now proceed to the personal jurisdiction analysis.  Plaintiff argues that Defendant has misappropriated its ideas which were born in Kentucky and protected by Kentucky law.  That the subject matter of Plaintiff's claims originated in Kentucky does not, alone, provide sufficient grounds for jurisdiction over an out-of-state Defendant.  Plaintiff still bears the burden of proving that Defendant's contacts satisfy both the Kentucky long-arm statute governing tortious conduct as well as the requirements of Due Process. *See Papa John's Int., Inc. v. Entm't Mktg. & Commc'n Int., Ltd.*, 381 F. Supp. 2d 638, 641 (W.D. Ky. 2005)(citing *Welsh v. Gibbs*, 631 F.2d

---

[1]KUTSA provides the *only* avenue for claims based on idea misappropriation in Kentucky. *Auto Channel II*, 144 F. Supp. 2d at 789.  For purposes of this personal jurisdiction analysis only, the Court will assume that the proprietary and confidential information Plaintiff references would meet KUTSA's statutory definition of "trade secret" noting, however, that "unless defendants misappropriated a (statutory) trade secret, they did no legal wrong." *Id.* (citation omitted).  Therefore,  Kentucky courts would not recognize a separate cause of action for conversion of confidential information.

436, 438 (6th Cir. 1980)).

## II.

The Court's analysis begins with an examination of Kentucky's long-arm statute, Ky. Rev. Stat. Ann. § 454.210(2)(a)(4).  As it has on previous occasions, the Court notes that while that statute has been interpreted to reach the limits of Due Process, this interpretation does not mean a court should "ignore the precise language which the legislature has chosen to ensure the constitutional compliance." *Auto Channel I*, 995 F. Supp. at 763.  The Kentucky long-arm statute provides in pertinent part for personal jurisdiction:

> over a person who acts directly or by an agent, as to claims arising
> from the person's: . . . [c]ausing tortious injury in this Commonwealth
> by an act or omission outside this Commonwealth if he regularly does
> or solicits business, or engages in any other persistent course of
> conduct, or derives substantial revenue from goods used or consumed
> or services rendered in this Commonwealth, provided that the tortious
> injury occurring in this Commonwealth arises out of the doing or
> soliciting of business or a persistent course of conduct or derivation of
> substantial revenue within the Commonwealth.

Ky. Rev. Stat. Ann. § 454.210(2)(a)(4).  The fact that proper application of this statute would be theoretically satisfied by the same minimum contacts analysis required by due process does not render the long-arm statute superfluous since it is possible to decline jurisdiction based only on the language of the statute and specific provisions of the statute may provide additional guidance. *See Auto Channel I*, at 764 n. 3.  Plaintiff makes two factual allegations relevant to establishing jurisdiction under the statute.  First, Plaintiff argues that Defendant satisfies the statutory condition of "deriv[ing] substantial revenue from . . .services rendered in this Commonwealth" because Defendant realized improper gain from the alleged misappropriation of

4

Plaintiff's Upgrade Request Plan, which Plaintiff characterizes as an intangible asset "located" in Kentucky. Plaintiff also contends that Defendant directed "numerous" and "systematic" communications to Plaintiff in Kentucky.

A.

The Court concludes that these contacts with Kentucky do not individually or in combination meet the requirements of Ky. Rev. Stat. Ann. § 454.210(2)(a)(4). First, there is no evidence that Defendant "does or solicits" business in Kentucky. It is undisputed that Plaintiff made the initial contact to solicit a business relationship with Defendant. Defendant has no business operations whatsoever within Kentucky. It was not attempting to establish or upgrade a radio station in Kentucky, nor was it trying to exploit any market for its radio stations in Kentucky. The radio stations which were the subjects of the FCC requests were both located in California.

Relevant to this analysis is that Defendant was a would-be "buyer" as opposed to the "seller" of the Upgrade Request Plan. In the context of personal jurisdiction, the Court of Appeals of Kentucky has noted a distinction between nonresident buyers and sellers:

> On the one hand the non-resident seller is actively promoting the sales of its products in the forum state and invoking the benefits and protections of its laws while the non-resident purchase occupies a passive role and usually enjoys no particular privilege or protection in purchasing products from a resident seller.

*First National Bank of Louisville v. Shore Title Co.*, 651 S.W.2d 472, 473 (Ky. Ct. App. 1982)(citations omitted). Though the parties here were contracting for services as opposed to goods, Defendant occupies a similarly "passive role." For this reason that the Court remains unpersuaded by the fact that Defendant may have communicated with the Plaintiff through

5

letters, telephone calls, e-mails or facsimiles directed to Kentucky. The only reason the communications in question were directed to Kentucky is because Plaintiff found it convenient to be located there. Presumably, it was immaterial to Defendant whether Plaintiff developed the Upgrade Request Plan in Kentucky, California, or elsewhere and Defendant would have been willing to communicate with Plaintiff without regard to Plaintiff's location. *See Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 395 (6th Cir. 1997).

B.

Plaintiff also argues that Defendant "derived substantial revenue from goods used or consumed or services rendered in this Commonwealth" from Defendant's improper gain from its alleged misappropriation of Plaintiff's Upgrade Request Plan. Ky. Rev. Stat. Ann. § 454.210(2)(a)(4). This argument is unconvincing in these circumstances.

First, Defendant supplies absolutely no goods or services to Kentucky. Plaintiff's argues that because Defendant allegedly has derived substantial revenue from services that *Plaintiff* rendered in Kentucky, Defendant should be subject to jurisdiction in Kentucky. The Court disagrees. Such an interpretation would shift the focus of the analysis to *Plaintiff's* activities and not Defendant's contacts with the state. The more natural reading of this language and one that is consistent with a traditional minimum contacts analysis leads a court to examine whether Defendant actually renders goods or services in Kentucky sufficient to support jurisdiction. Moreover, as the Sixth Circuit has recognized, "[t]he locus of a monetary injury is immaterial, as long as the obligation did not arise from 'a privilege the defendant exercised in [the forum state].'" *LAK, Inc. v. Deer Creek Ent.*, 885 F.2d 1293, 1303 (6th Cir. 1989)(quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).

6

The Court is confident that its analysis comports with recent decisions of Kentucky courts considering the same provision of Kentucky's long-arm statute. *See, e.g.*, *Powers v. Park*, 192 S.W.3d 439, 443 (Ky. Ct. App. 2006)(noting that "regular solicitation or conduct of business in Kentucky . . . is also necessary when the act that caused the alleged tortious injury did not occur in Kentucky"); Instructive also is *Pierce v. Serafin*, 787 S.W.2d 705 (Ky. Ct. App. 1990), where the court applied Ky. Rev. Stat. Ann. § 454.210(2)(a)(4) to a claim alleging invasion of privacy by an out-of-state Defendant who wrongfully mailed a medical evaluation to Plaintiff's in-state physician.  The court recognized that Defendant's out-of-state communication caused a "consequence" in Kentucky and formed a "substantial enough connection with the forum state to make the exercise of jurisdiction reasonable." *Id.*  Ultimately, however, the Court concluded that "[i]t is with the second portion of the test that appellant's difficulty arises in that it requires *that the cause of action must arise from defendant's activities [in Kentucky]*." *Id.* (emphasis added). Like the Defendant in *Pierce,* Defendant here has simply not acted in Kentucky.  Defendant may have committed an act that had a consequence in Kentucky, but it did not commit that act in Kentucky. Nor does Defendant have "sufficient minimum contacts (as described in KRS 454.210(2)(a)(4)) such as the regular conduct or solicitation of business in Kentucky, to justify the exercise by the courts of . . .of personal jurisdiction over [it]." *Powers*, 192 S.W.3d at 443-44.

In sum, Plaintiff has directed the Court's attention to the section of Kentucky's long-arm statute addressing out-of-state conduct causing in-state injury. Ky. Rev. Stat. Ann. § 454.210(2)(a)(4).  As demonstrated through the analysis above, however, Defendant's contacts are insufficient to put it within the class of out-of-state actors susceptible to personal jurisdiction

under this provision of the long-arm statute.

III.

The due process analysis followed in the Sixth Circuit only confirms the Court's

conclusion that Plaintiff lacks the requisite minimum contacts with Kentucky to support personal

jurisdiction.  The Sixth Circuit employs a familiar three part test for determining whether

personal jurisdiction comports with due process:

> First, the defendant mus purposefully avail himself of the
> privilege of acting in the forum state or causing a consequence
> in the forum state.  Second, the cause of action must arise
> from the defendant's activities there.  Finally, the acts of the
> defendant or consequence caused by the defendant or
> consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise
> of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)(footnote

omitted).  The Supreme Court has recognized that the "analysis shifts slightly when the

application fo the *purposeful availment* prong turns on a tort or fraud-based claim." *D.C. Micro*

*Dev., Inc. v. Lange*, 246 F. Supp. 2d 705, 709 (W.D. Ky. 2003)(emphasis added)(citing *Calder v.*

*Jones*, 465 U.S. 783 (1984).  In *Calder,* the Supreme Court established an "effects test" for

intentional torts aimed at the forum state. 465 U.S. 783 (1984). The Court held that it was proper

for a California court to exercise jurisdiction over Florida reporters for The National Enquirer

who the plaintiff alleged had published a libelous article. Finding that the "article was drawn

from California sources, and the brunt of the harm . . . was suffered in California," the Court

concluded that jurisdiction was proper because the "'effects of their Florida conduct [was based]

8

in California." *Id.* Similarly, in *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001), the Sixth Circuit concluded that communications with the forum state that themselves give rise to the cause of action are sufficient to support a finding of personal jurisdiction over a non-resident defendant making the tortious contact. Specifically, the Court in *Neal* determined that personal jurisdiction was proper over an out-of-state defendant who had made fraudulent statements over the phone in the course of selling a horse boarded in the Netherlands. *Id.* at 330.  In considering whether the Defendant "purposefully availed himself" of the privilege of acting in Tennessee, the Sixth Circuit noted that the Defendant intentionally defrauded Plaintiff in the contacts he directed to Plaintiffs who were located in Tennessee. *Id.*  The false representations made in these communications were "the heart of the lawsuit," and consequently the Court found the purposeful availment prong was satisfied. *Id.*

A.

This Court has employed the "effects test" in considering whether a nonresident Defendant who allegedly remotely hijacked in-state computer accounts had purposefully availed itself of Kentucky.  *D.C. Micro*, 246 F. Supp. 2d 705.  There, the Court concluded that personal jurisdiction was proper because the alleged hacking concerned information kept on a Kentucky server,  the Defendant sent mass e-mails to Kentucky residents fraudulently urging them to upgrade their product to what was effectively a separate product, and the Defendant redirected customers from a Kentucky-based website to the Defendants' out-of-state website.  *Id.* at 712.  Very recently, the Court in *Kerman v. Chenery Assoc. Inc.*, 2007 WL 2363283, at *2 (W.D. Ky. 2007), observed that "in an intentional tort-based action, purposeful availment has been found where a non-resident defendant engaged in wrongful conduct targeted at a plaintiff in the forum

9

state."  There, the Court found that a Defendant who solicited and induced Plaintiffs through e-mails, telephone calls, and faxes to invest in what was ultimately determined to be an abusive tax shelter had sufficient contacts with Kentucky since these contacts themselves formed the basis for the Plaintiffs' fraud claim.  *Id.*

In *Neal*, *D.C. Micro*, and *Kerman,* the claims involved fraud of some type and personal jurisdiction was premised on the notion that the "communications themselves create the tort." *See, e.g. Kerman*, 2007 WL 2363283 at*2.  Plaintiff here argues that its case is similar to such "effects test" cases because it alleges a fraudulent misrepresentation which was accomplished through Defendant directing communications to Kentucky.  But in *Neal, D.C. Micro*, and *Kerman* the communications involved were fraudulent with respect to present or past material facts, not as to future intentions in a contractual relationship.  In other words, the statements forming the basis for jurisdiction were made to further a preexisting fraudulent scheme.  For example in *Neal,* the facts suggest that the Defendant horse-trader knew that he was communicating a sale price substantially lower than what he actually received.  Similarly, all the communications soliciting Plaintiffs to participate in the fraudulent money scheme involved in *Kerman* were, as the Court noted, "acts of deception" with respect to present material facts. at *3.  In this case, the confidentiality  agreement was a term in a negotiated contract.  That Defendant affirmatively agreed to a contract term distinguishes such an agreement from the false statements of present material facts made by the Defendants in the other fraud cases courts have considered.  Moreover, in each of those cases the defendants were soliciting or defrauding an in-state Plaintiff through an affirmative misrepresentation constructed by the Defendant.  By contrast, Plaintiff's fraudulent misrepresentation here is Defendant's assent to the confidentiality

10

provision of a contract.  Plaintiffs have simply failed to show that Kentucky's long-arm statue would permit a conclusion that Defendant has purposefully availed itself of the privilege of causing a consequence in Kentucky such that it should have reasonably expected to be haled into a Kentucky court.

In facts similar to those at hand, in *Turek v. Mold-Rite Tool, Inc.* 2006 WL 3068813 (E.D. Ky.) an Eastern District judge considered Plaintiffs' reliance on *Neal* and *Calder* in the context of the requirements of Kentucky's long-arm statute.  Plaintiffs argued that Defendants' communications directed to Kentucky Plaintiffs formed the "bases" of their fraud and misrepresentation claim. *Id.* The alleged misrepresentation involved Defendants' intention to pay for Plaintiffs' products and to refrain from using the products for Defendant's own benefit.  *Id.* Despite these contentions, the court concluded "Plaintiffs have simply not met the requirements of Kentucky's long-arm statute." *Id.*   As in *Turek*, although Plaintiff's claims sound in fraud, they fail to meet the statutory requirements for personal jurisdiction under Kentucky's long-arm statute.

### B.

The second prong of the *Mohasco* analysis tests whether the claim can be said to "arise out of" the Defendant's contacts with the forum.  As with the purposeful availment consideration, the Sixth Circuit has observed that the "'arising out of' requirement must be considered separately for each cause of action asserted by a plaintiff." *Preferred RX, Inc. v. Am. Prescription Plan., Inc.*, 46 F.3d 535, 550-51 (6th Cir. 1995)(observing that because "the facts supporting a fraud claim and a tortious interference claim were not identical . . . the contacts on which jurisdiction could be premised for the two torts were not identical.").  Plaintiff does not

11

appear able to demonstrate a causal link between its claim and Defendant's minimal contacts with Kentucky.  If Defendant misappropriated the Upgrade Request Plan, it did so only when it filed the request without paying the Plaintiff as agreed.  The improper use of the Plaintiff's trade secret did not involve a Kentucky radio station, rather it was allegedly implemented to increase the value of stations in Kentucky and the filing took place in Washington, D.C.  These allegedly wrongful acts simply bear no relationship to any business or revenue derived from Defendant's activities within Kentucky.  Indeed, the allegedly tortious act causing Plaintiff's injury necessarily occurred outside of Kentucky. *See Kennedy v. Zeismann*, 526 F. Supp. 1328, 1331 (E.D. Ky. 1981)("Here, the cause of action alleged, if any exists, arose in Ohio when the anesthetic was administered, and the telephone calls [by the doctor to Kentucky] were only incidental.").

Having found that the first two prongs of the *Mohasco* test have not been met, it would be imminently unreasonable to subject to the defendant to the personal jurisdiction of a federal court located in Kentucky.

## IV.

The Court's analysis of Plaintiff's tort claims (as opposed to its contract claims) does not alter the Court's conclusion that Defendant lacks minimum contacts with Kentucky. This is true under either the statutory requirements of Ky. Rev. Stat. Ann. § 454.210(2)(a)(4) or the similar due process "effects test," both of which specifically address tort claims.  To be sure, Kentucky has a legitimate interest in ensuring that its citizens receive compensation for injury, especially when the injury results from allegedly tortious conduct.  However, unless Defendant has the requisite contacts, Kentucky's interest in providing a home forum is insufficient to support

jurisdiction.  *See Auto Channel I*, 995 F. Supp. at 766-67.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion to alter, amend or vacate the Court's

order of August 3, 2007, is DENIED.

cc:     Counsel of Record